IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | | |
|---|---|---|
| VTran Media Technologies, LLC,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No.<br>1:08-cv-00200-WWC |
| | §<br>§ | |
| Atlantic Broadband Finance, LLC<br>d/b/a Atlantic Broadband, Cablevision<br>Systems Corporation, and MetroCast<br>Cablevision of New Hampshire, LLC, | §<br>§<br>§<br>§ | (Judge Caldwell) |
| Defendants. | §<br>§<br>§<br>§<br>§ | |

**PLAINTIFF'S OPPOSITION TO
<u>CABLEVISION SYSTEMS CORPORATION'S MOTION TO DISMISS</u>**

## INTRODUCTION

Plaintiff VTran Media Technology, LLC ("VTran") currently owns complete, full, unencumbered, and total right, title, and interest in and to U.S. Patent No. 4,890,320 and U.S. Patent No. 4,995,078 (collectively "the Patents"). H. Vincent Monslow, Sue A. Dickey, and J. Bret Armatas collectively owned 100% of the interest in, and thus could transfer exclusive ownership in the Patents. This exclusive ownership provides Plaintiff the standing to properly bring this lawsuit against each defendant in this case. Accordingly, Defendant Cablevision Systems Corporation's ("CSC") motion to dismiss should be denied.

## I.   Counterstatement of Facts

### A.   Chain of Title of the U.S. Patent Nos. 4,890,320 and 4,995,078

There is no dispute that U.S. Patent No. 4,890,320 ("the '320 Patent") issued on December 26, 1989, and U.S. Patent No. 4,995,078 ("the '078 Patent") issued on February 19, 1991. *See* Declaration of Michael G. Gabriel in Support of Plaintiff's Opposition to Cablevision's Motion ("Gabriel Dec.") at Exs. A. B (all exhibits to the Gabriel Dec. shall be designated by letter herein). The Patents are each entitled "Television Broadcast System for Selective Transmission of Viewer-Chosen Programs at Viewer-Requested Times." *Id.* Each of the Patents name H. Vincent Monslow and Steven R. Dickey as inventors. *Id.* Mr. Monslow and Mr. Dickey entered into a "Patent Ownership Agreement" dated January 5, 1988. Ex.

C. The "Patent Ownership Agreement" provided that Mr. Monslow maintained an eighty five percent (85%) relative ownership interest in the patents and Mr. Dickey maintained a fifteen percent (15%) relative ownership interest in the patents. The "Patent Ownership Agreement" was subsequently recorded with the United States Patent and Trademark Office. Exs. L, M.

It is also not disputed that by an "Assignment *Nunc Pro Tunc*" dated April 13, 2005, Mr. Monslow assigned a 15% ownership interest in the Patents to J. Bret Armatas. Ex. E. The *nunc pro tunc* assignment to Mr. Armatas confirmed a verbal agreement between Mr. Monslow and Mr. Armatas dating back to 1988. *Id.* Accordingly, Mr. Monslow maintained a seventy percent (70%) relative ownership interest in the Patents, Mr. Dickey maintained a fifteen percent (15%) relative ownership interest in the Patents, and Mr. Armatas maintained a fifteen percent (15%) relative ownership interest in the Patents. *Id.* The "Assignment *Nunc Pro Tunc*" was subsequently recorded with the United States Patent and Trademark Office. Exs. L, M.

Mr. Dickey died intestate on February 12, 1999. By a "Decree of Descent" dated August 9, 2000 from the District Court of Johnson County, Kansas, Family Court Department, Probate Section, title to all of the property in Mr. Dickey's estate descended to his wife, Sue A. Dickey. Ex. D. Ms. Dickey became the sole

heir to Mr. Dickey's fifteen percent (15%) relative ownership interest in the Patents.

Pursuant to a March 15, 2005 "Patent Assignment Agreement", Mr. Monslow, Ms. Dickey, and Mr. Armatas conditionally assigned the Patents to LP Matthews, LLC ("LP Matthews") on or about April 23, 2005 for the purpose of allowing LP Matthews to pursue licensing and enforcement of the Patents. The "Patent Assignment Agreement" and an associated "Patent Assignment" are respectively at Exs. F and G.

On July 27, 2006, LP Matthews assigned the Patents back to Mr. Monslow, Ms. Dickey, and Mr. Armatas. Ex. H.

It is undisputed that on July 31, 2006, Mr. Monslow, Ms. Dickey, and Mr. Armatas executed an "Assignment of Patents" with the intention to transfer all right, title and interest in the Patents to a buyer of the Patents at the fall 2006 Ocean Tomo Intellectual Property Auction. Ex. N. On October 26, 2006, Concert Technology Corporation was the purchaser of the Patents in the fall 2006 Ocean Tomo auction. Shortly after, Concert Technology Corporation executed the "Assignment of Patents" previously executed by Mr. Monslow, Ms. Dickey, and Mr. Armatas. *Id.* The "Assignment of Patents" was subsequently recorded with the United States Patent and Trademark Office. Exs. L,M.

Concert Technology Corporation, then the sole owner of all right, title and interest in and to the Patents, assigned its interests to VTran Media Technologies, LLC. Ex. O. The "Patent Assignment" was subsequently recorded with the United States Patent and Trademark Office. Exs. L,M.

Mr. Monslow, Ms. Dickey, and Mr. Armatas each offer affidavits of their understanding of facts concerning the chain-of-title of the Patents as described above. Exs. I, J, K. It is the sworn statement of each that they are aware of no other sales, transfers, assignments, licensing arrangements or the like involving the Patents aside from those discussed in their affidavits. Exs. I at ¶8, J at ¶10, K at ¶7.

Unless specifically noted, VTran denies, or lacks sufficient knowledge and therefore denies, CSC's allegations and characterization regarding the "Record of Ownership of the '320 and '078 Patents". VTran asserts that its description herein is the complete and accurate chain-of-title information for the Patents.

VTran's pleadings provide proper and sufficient notice for its allegations of direct infringement, contributory infringement, and inducement of infringement by CSC of the Patents. *See* Docket Index 1 ("D.I.") at ¶¶ 14, 15, 25, 26.

## ARGUMENT

### I. The Case Should Not Be Dismissed Under Rule 12(b)(1) Because All of CSC's Jurisdictional Questions have been Resolved

#### A. LP Matthews, LLC Assigned All Rights it Had in the Patents Back to Mr. Monslow, Ms. Dickey, and Mr. Armatas Prior to the Sale to Concert Technology Corporation

The March 15, 2005 "Patent Assignment Agreement" between Mr. Monslow, Ms. Dickey, and Mr. Armatas provides that:

> 9.1. Assignee's ownership interest in the Patents (and all rights assigned herewith) shall revert to Assignors upon the occurrence of any of the following events:
>
> ...
>
> 9.1.2. If, at any time after the execution of this Agreement, Assignee determines that it does not intend to, or cannot reasonably, pursue licensing and enforcement of the Patents. Ex. F.

The assignment to LP Matthews was conditional on LP Matthews' ability and willingness to license and enforce the Patents. According to the sworn affidavits of Mr. Monslow, Ms. Dickey, and Mr. Armatas, LP Matthews did not sell, transfer, assign or otherwise encumber in any manner the Patents during the time the Patents were conditionally assigned to LP Matthews. Exs. I at ¶8, J at ¶10, K at ¶7. When LP Matthews decided that it could not reasonably pursue licensing and enforcement of the Patents, under the terms of the "Patent Assignment Agreement", the conditional interest assigned to LP Matthews

6

reverted to Mr. Monslow, Ms. Dickey, and Mr. Armatas. Exs. I at ¶6, J at ¶9, K at ¶5. The reversion was formalized in the July 27, 2006 "Patent Assignment" from LP Matthews to Mr. Monslow, Ms. Dickey, and Mr. Armatas. Ex. H. Thus, LP Matthews had assigned all rights it had in the Patents back to Mr. Monslow, Ms. Dickey, and Mr. Armatas prior to the sale to Concert Technology Corporation.

The assignment documents presented herein in conjunction with the sworn affidavits of Mr. Monslow, Ms. Dickey, and Mr. Armatas are indisputable evidence overcoming the questions raised by CSC as to jurisdictional issues concerning any interest in the Patents by LP Matthews.

    **B.**    **Sue A. Dickey Was the Sole Heir to Steven R. Dickey's Ownership Interest in the Patents**

The January 5, 1988 "Patent Ownership Agreement" between Mr. Monslow and Mr. Dickey required Mr. Dickey not to license, sell, assign, or otherwise dispose of his ownership interest in the Patents without the prior written consent of Mr. Monslow. Ex. C. Prior to his death, Mr. Dickey had not licensed, sold, transferred, assigned, or in any manner encumbered or conveyed to any party any portion of his right, title, or interest in and to the Patents. Ex. J at ¶5.

When Mr. Dickey died intestate on February 12, 1999, he had no heirs other than Ms. Dickey and his three adult children. Ex. D. His three surviving adult children disclaimed any and all ownership interests in the property of Mr. Dickey. *Id.* Properly, ownership of the Patents following the death of one of the owners

was determined under the appropriate state law. *See Akazawa v. Link New Technology Int'l, Inc.,* 520 F.3d 1354 (Fed. Cir. March 31, 2008). By "Decree of Descent" of August 9, 2000, the District Court of Johnson County, Kansas, Family Court Department, Probate Section ordered that:

> The title to all of the interest of the decedent, in and to the property above described and all other property owned by the decedent on the date of death, descended from the decedent to the decedent's heirs at law pursuant to the laws of intestate succession in the following proportion:
>
> To Sue Ann Dickey – 100%. *Id.*[1]

As discussed above, Mr. Dickey owned a fifteen percent (15%) relative ownership interest in the Patents. Nothing in the transfer of that interest from Mr. Dickey to Ms. Dickey would prevent VTran from being the current exclusive owner of the Patents.

Clearly, the "Decree of Descent" in conjunction with the sworn affidavit of Ms. Dickey are overwhelming evidence overcoming the questions raised by CSC as to jurisdictional issues concerning the transfer of ownership from Mr. Dickey to Ms. Dickey.

---

[1] The "Decree of Descent" lists the '078 Patent specifically under paragraph 10, while the '320 Patent was also part of Steven R. Dickey's estate at the time of his death and also descended to Ms. Dickey pursuant to clause B of the Court's Order in the "Decree of Descent". Ex. D.

### C. Mr. Monslow's Father Never Had an Ownership Interest in the Patents

Just as CSC acknowledges that Mr. Monslow's ex-wife's interest in the income from the Patents was not an interest in the Patents themselves (*see* D.I. 21, p.5, n.6) Mr. Monslow's father too was only entitled to a percentage of proceeds. CSC makes a bare allegation that Mr. Monslow's father owned more than simply an interest in income from the Patents. This is at best a misreading of what CSC referred to as "conflicting...testimony" (*see* D.I. 21, p.4, n.4), but rather it appears to be a blatant misreading of Mr. Monslow's clear testimony. At his May 7, 2007, deposition relating to his ex-wife's enforcement proceeding to recover a 40% interest of the proceeds from the sale of the Patents, Mr. Monslow was explicitly clear on at least four points: (1) the ownership interest of the patent partnership did not change from the time prior to the 1992 divorce related testimony until the sale of the Patents, (Ex. P, p.24, ll. 17-22), (2) that ownership interest was held by himself, Mr. Dickey (and heirs) and Mr. Armatas (Ex. P, p.25, l.3- p.27, l.2), (3) that his father had a second tier interest in the Patents limited to a percentage out of Mr. Monslow's proceeds (Ex. P, p.27, ll. 3-13), and (4) that Mr. Monslow was keenly aware of the distinction in these different interests (Ex. P, p.24, l.23- p.25, l.2). There is no jurisdictional question here.

In fact, Mr. Monslow's testimony that his father had only an interest in proceeds from the Patents is even more clear and credible when you account for

that fact that it was a statement against his economic interest. Had his father actually had an ownership interest in the Patents, the amount of the proceeds from the sale of the Patents that both he and his father would have retained after paying out his ex-wife's percentage would have been higher. For example, if Mr. Monslow's father were to have actually had an 18% ownership in the Patents, under the Monslow divorce decree, Mr. Monslow's ex-wife's share of Mr. Monslow's proceeds would have been 40% of Mr. Monslow's remaining 52% ownership interest. Mr. Monslow's ex-wife's share would have been equivalent to <u>only 20% of the entire proceeds from the Patents, leaving over 31% to Mr. Monslow and a full 18% to his father</u>. However, Mr. Monslow's clearly testified that his father had only an interest in the proceeds—the same type of interest as Mr. Monslow's ex-wife. Thus the ex-wife was entitled to 40% of the proceeds from Mr. Monslow's 70% ownership interest in the Patent. Mr. Monslow's ex-wife was now entitled to <u>28% of the entire proceeds from the Patents. As a result, his father was left with less than 13% of the entire proceeds from the Patents and Mr. Monslow with only 29% of the entire proceeds from the Patents.</u>

Had Mr. Monslow ever granted an ownership interest in the Patents to his father, he had every incentive to testify that he had. But he did not. And this is because no such interest ever was granted.

Finally, even if Mr. Monslow intended his father to be an owner in the Patents, there is no evidence of any written instrument assigning that interest to him. An assignment of an interest in a patent must be made in writing. *See*, 35 USC §261. And if any such assignment ever did exist, it would be void against Concert Technologies Corporation and against VTran because it had not been recorded. *See Id.*

Accordingly, there is no jurisdictional question concerning Mr. Monslow's father because Mr. Monslow's father never had an ownership interest in the Patents.

## II.  The Case Should Not Be Dismissed Under Rule 12(b)(7) Because All Necessary and Indispensible Parties are Present

VTran currently owns complete, full, unencumbered, and total right, title, and interest in and to the Patents. As proven above, Mr. Monslow, Ms. Dickey, and Mr. Armatas collectively owned 100% of the interest in, and thus could transfer 100% interest in the Patents to Concert Technologies Corporation and on to VTran. No other parties are necessary or indispensible for this suit to proceed. Accordingly, CSC's motion to dismiss under Rule 12(b)(7) should be denied.

## III.  Jurisdictional Discovery is Not Necessary or Appropriate

CSC requests in the alternative that it be permitted to take limited jurisdictional discovery concerning VTran's allegations of ownership of the

Patents and that the Court hold an evidentiary hearing concerning those jurisdictional facts.

This is not necessary as VTran has presently resolved every jurisdictional question CSC has presented. Jurisdictional discovery and an evidentiary hearing would further be inappropriate at this time as a waste of both the Court's and the parties' time. A hearing is scheduled for May 29, 2008 before the U.S. Judicial Panel on Multidistrict Litigation ("JPML") for the purpose of determining if this suit, and all related suits, should be transferred and consolidated pursuant to 28 U.S.C. § 1407. VTran reasonably believes that the JPML will order this suit transferred to a MDL court in Texas, Ohio, or some other district, and that the order transferring this suit would moot any early discovery schedule that this Court may order on jurisdictional issues.

## CONCLUSION

Accordingly, for the reasons above, VTran respectfully requests that CSC's motion to dismiss under Rules 12(b)(1) and 12(b)(7), and its request for jurisdictional discovery and an evidentiary hearing be denied.

                                                      Respectfully submitted,

Dated: May 9, 2008

                                                  Wayne Spivey, Esq.
E-mail: wspivey@shragerlaw.com
**SHRAGER, SPIVEY & SACHS**
Two Commerce Square
2001 Market Street, 32nd Floor
Philadelphia, PA 19103
Phone: (215) 568-7771
Facsimile: (215) 568-7495

OF COUNSEL:

| | |
|---|---|
| W. Lewis Garrison, Jr., Esq. | John F. Ward, Esq. |
| E-mail: wlgarrison@hgdlawfirm.com | E-mail: wardj@wardolivo.com |
| Timothy C. Davis, Esq. | John W. Olivo, Jr., Esq. |
| E-mail: tim@hgdlawfirm.com | E-mail: olivoj@wardolivo.com |
| **HENINGER GARRISON & DAVIS, LLC** | **WARD & OLIVO** |
| 2224 1st Avenue North | 380 Madison Avenue |
| Birmingham, Alabama 35203 | New York, New York 10017 |
| Phone: (205) 326-3336 | Telephone: (212) 697-6262 |
| Facsimile: (205) 326-3332 | Facsimile: (212) 972-5866 |

                                                  **ATTORNEYS FOR PLAINTIFF VTRAN MEDIA TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 9th day of May, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of each filing to the following:

John F. Petrsoric
Goodwin Procter LLP
599 Lexington Ave.
New York, NY 10022
(212) 459-7039
(Counsel for Defendant Cablevision Systems Corporation)


David Weaver
Vinson & Elkins, LLC
2801 Via Fortuna
Suite 100
Austin, TX 78746-7568
(512) 542-8400
(Counsel for Defendant Atlantic Broadband Finance, LLC, Harron Communications, L.P., and Gans Communications, L.P.)